IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| EUGENE SELF, § | | |
| (BOP No. 76522-080), § | | |
| Plaintiff, § | | |
| V. § | CIVIL ACTION NO. 4:18-CV-666-P | |
| § | | |
| UNITED STATES OF AMERICA, § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court for review of pro-se inmate/plaintiff Eugene Self's ("Self") claims under the Federal Tort Claims Act (FTCA) against the United States of America (USA). Now pending is the motion for summary judgment of defendant USA, along with a brief in support and an appendix. USA Mot. for Summ J, ECF No. 22; USA Brief, ECF No. 23; USA App., ECF No. 24. Plaintiff filed a response to the motion for summary judgment incorporating a motion for appointment of an expert witness (ECF No. 27), and he separately filed motions for appointment of counsel and for a jury trial (ECF No. 28). The USA filed a reply to Self's response and related motions. (ECF No. 31.) After review and consideration of the summary judgment motion, supporting documents, Self's response, Self's motions, the USA reply, the record, and the applicable law, the Court concludes that the USA is entitled to summary judgment, and that Self's motions must be denied.

### PROCEDURAL HISTORY and BACKGROUND

Plaintiff Self, is now an inmate at the Bureau of Prisons' ("BOP") FMC-Fort Worth

facility.[1] He was convicted on a two-count indictment for conspiracy with intent to distribute cocaine (Count I) and possession with intent to distribute cocaine (Count II) in 2009. *See United States v. Self*, 7:09-CR-66-DC-1 (W.D. Tex.), ECF No. 64. Self was sentenced to a term of 188 months of confinement. *Self*, 7:09-CR-66-DC-1 (W.D. Tex.), ECF No. 69. His sentence was partially commuted, and Self was released on or about October 5, 2018, with a six-year term of supervised release. *Self*, 7:09-CR-66-DC-1 (W.D. Tex.) , ECF No. 122; USA App. 116, ECF No. 24-4.

Self filed this lawsuit while he was still in prison. He alleges that he began having problems with his vision while he was incarcerated from October 2015 until the time suit was filed in 2018. Complaint, 2-5, ¶¶ 9-23, ECF No. 1. During this time, he was incarcerated by the Bureau of Prisons (BOP) at FCI-Terre Haute in Terre Haute, Indiana and at FMC-Fort worth in Fort Worth, Texas. App. 115, ECF No. 24-4. A year after his release in October 2018, Self was re-arrested for allegedly violating the terms of his supervised release and re-incarcerated on or about October 7, 2019 pending a final revocation hearing. *Self*, 7:09-CR-66-DC-1 (W.D. Tex.), ECF Nos. 129, 134. His supervised releaes was revoked and he was committed to the BOP for a total of 60 months. *Id*, 7:09-CR-66-DC-1 (W.D. Tex.), ECF No. 145.

Self complains and alleges that the BOP medical staff and outside medical providers committed medical negligence by not providing proper medical treatment for his vision and

---

[1] See www.bop.gov (inmate Eugene Durst Self, Register Number 76522-080) last visited April 2, 2020.

glaucoma diagnosis. Complaint 5-6, Attachment, ECF No. 1. Self's factual allegations begin while he was housed at U.S.P. Terre Haute in Terre Haute, Indiana from October 2015 until December 2016, when he was transferred into FMC-Fort Worth. *Id*. at 3-4. Self's chronology of events continues at FMC-Fort Worth where he was eventually diagnosed with "primary open angle glaucoma in both eyes – severe stage."*Id*. at 4.

## SUMMARY JUDGMENT EVIDENCE

As noted, the USA filed an appendix in support of the motion for summary judgment that includes a total of 132 pages of records. ECF No. 24-1-24-6. In particular, the appendix includes the December 4, 2019 Declaration of BOP Health Systems Specialist Jeneen N. Ratiliff with 98 pages of copies of Self's medical records (ECF No. 24-2, 1-100); the December 4, 2019 Declaration of BOP Health Systems Specialist Cynthia James with 12 pages of copies of Self's precertificatoin medical records (ECF NO. 24-3, 1-14); the December 5, 2019 Declaration of BOP Senior Attorney Darrin C. Scott with two pages of SENTRY inmate designation records for Self (ECF No. 24-4, 1-4); the separate December 6, 2019 Declaration of Scott with copies of Self's administrative claim records (ECF No. 24-5, 1-6); and the December 6, 2019 Declaration of BOP Deputy chief Pharmacist Susan Alu (ECF No. 24-6). Self declared his complaint in this matter to be "true and correct" and made "under penalty of perjury." Complaint 7, ECF No. 1. Under controlling circuit authority, this Court must consider the complaint as competent summary-judgment evidence in resolving the summary judgment motion. *See Barnes v. Johnson,* 204 F. App'x 377, 378 (5th Cir. 2006) (citing *King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994) (a plaintiff's verified complaint may

serve as competent summary judgment evidence); *see also Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (citing *Huckabay v. Moore,* 142 F.3d 233, 240 n. 6 (5th Cir. 1998); *see generally Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir. 1989) (noting that the statutory exception in 28 U.S.C. § 1746 permits unsworn declarations to substitute for an affidavit if made "under penalty of perjury" and verified as "true and correct").

The USA has presented a lengthy history related to what Self's medical records in the USA Appendix reveal regarding the medical care provided to him during the relevant time periods made the basis of the complaint. USA Brief 7–12, ECF No. 23. Self has not come forward with any evidence to contest defendant USA's summary judgment motion. Resp. 4–5, ECF No. 32. As explained in detail in the analysis section below, however, because all of Self's medical care claims for relief under the FTCA can be resolved on a legal ground, the Court does not include a restatement of a factual chronology.

## SUMMARY JUDGMENT STANDARD

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)(citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law."*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a defendant movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions,

etc.), or (b) show either that (1) the plaintiff cannot produce admissible evidence to support that particular fact, or (2) if the plaintiff has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is required to consider only the cited materials, it may consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. . . ." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (other citation omitted)). In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted)(internal quotation marks omitted). "After the non-movant [here, Jenkins] has been given the opportunity to raise a genuine factual [dispute], if no reasonable juror could find for the non-movant, summary judgment will be granted." *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Expert Testimony Required to Support Medical Negligence Claims

Self alleges negligence under the FTCA on the part of BOP medical staff and outside

contractors with FCI-Terre Haute and at FMC-Fort Worth. Complaint 3-5, ECF No. 1. He alleges that the failure to provide proper medical treatment for his eyes and poor vision condition and ultimate glaucoma diagnosis amounted to a breach of the duty of care that proximately caused him to sustain damages compensable under the FTCA, 28 U.S.C. § 2674. *Id.* at 5-6.

The FTCA authorizes civil actions for damages against the United States for personal injury caused by the negligence of government employees when private individuals would be liable under the substantive law of the state in which the negligent acts occurred. *See* 28 U.S.C.A. § 1346(b)(1) (West 2019); 28 U.S.C.A. § 2674 (West 2019); *see also Quijano v. United States*, 325 F.3d 654, 567 (5th Cir. 2003). The FTCA essentially borrows from state law in that it allows the United States to be held liable for allegedly tortious conduct "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, to the extent Self complains of alleged medical negligence occurring at FMC-Fort Worth in Texas, Texas law applies to Self's FTCA claims.[2] *See Ayers v. United*

---

[2]To the extent Self complains of matters occurring while he was imprisoned in Indiana, that state's law also requires expert testimony to establish the standard of care for matters that are not commonly known to lay persons. *See Davis v. United States*, 400 F. Supp. 3d 745, 749 (S.D. Ind. 2019) ("[t]he Indiana Supreme Court has explained that, 'except in those cases where deviation from the standard of care is a matter commonly known by lay persons, expert medical testimony is necessary to establish whether a physician has or has not complied with the standard of a reasonably prudent physician'") (quoting *Culbertson v. Mernitz*, 602 N.E.2d 98, 104 (Ind. 1992)); *see also Perry v. Driehorst*, 808 N.E.2d 765, 768 (Ind. Ct. App. 2004) ("Without the presentation of [an] expert medical opinion, the trial court could only conclude that there was no genuine issue of material fact and that summary judgment should be entered for [the medical provider].") Because the applicable medical negligence law is the same, the Court need not engage in a conflict-of-law analysis.

*States*, 750 F.2d 449, 452 n.1 (5th Cir. 1985) ("Under the [FTCA], liability for medical malpractice is controlled by state law.").

In Texas, "health care liability claims are subject to strict pleading and proof requirements." *N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co.*, 541 F.3d 552, 561 (5th Cir. 2008) (citing Tex. Civ. Prac. & Rem. Code §§ 74.001–507). Particular to the medical negligence context, under Texas law the plaintiff bears the burden of proving four elements: (1) a duty by the physician or hospital to act according to an applicable standard of care; (2) a breach of that standard of care; (3) injury; and (4) a causal connection between the breach of care and the injury. *See Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citing *Quijano*, 325 F.3d at 564-567); *see also Bryan v. Sherick*, 279 S.W. 3d 731, 732-33 (Tex. App.--Amarillo 2007, no pet); and *Denton Reg. Med. Ctr. V. LaCroix*, 947 S.W. 2d 941, 950 (Tex. App.-Fort Worth 1997, no writ). As a threshold issue, a plaintiff must establish the standard of care before the fact finder may consider whether the defendant breached the standard of care or if such a breach constituted negligence. *Hannah*, 523 F.3d at 601; *Denton Reg. Med. Ctr.*, 947 S.W.2d at 950. A Plaintiff must therefore prove how a reasonably careful and prudent physician would have acted under the same or similar circumstances. *See Hood v. Phillips*, 554 S.W. 2d 160, 165-66 (Tex. 1977). Texas law imposes a presumption that the health-care provider has discharged his duty of care. *Thomas v. Beckering*, 391 S.W. 2d 771, 775 (Tex. Civ. App.--Tyler 1965, writ ref'd n.r.e.); *Shevack v. United States*, 528 F. Supp. 427, 431 (N.D. Tex. 1981). A physician is not a guarantor of a cure, and negligence is not imputed from an unsatisfactory outcome. *See Hunter v. Robison*, 488 S.W. 2d 555, 560 (Tex.

Civ. App.--Dallas 1978, writ ref'd n.r.e.); *Beckering*, 391 S.W. 2d at 775. Defeating the presumption of proper care requires affirmative proof of negligence and proximate cause. *Williford v. Banowsky*, 563 S.W. 2d 702, 705 (Tex. Civ. App.--Eastland 1978, writ ref'd n.r.e.).

Expert testimony is required when the alleged negligence is "of such a nature as not to be within the experience of the layman." *FFE Transp. Serv., Inc. V. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004) (quoting *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982)) (other citations omitted). Particular to the medical context, expert testimony is required to establish the applicable standard of care "unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman . . .." *Hannah*, 523 F.3d at 601 (quoting *Hood,* 554 S.W. 2d at 165-66). The Plaintiff must similarly offer expert testimony on the issue of causation. *See Jelinek v. Casas*, 328 S.W. 3d 526, 533 (Tex. 2010) ("[T]he plaintiff must establish two causal nexuses in order to be entitled to recovery: (a) a causal nexus between the defendant's conduct and the event sued upon; and (b) a causal nexus between the event sued upon and the plaintiff's injuries"); *see also Arlington Memorial Hosp. Found., Inc., v. Baird,* 991 S.W. 2d 918, 922 (Tex. App. Fort Worth 1999, pet. denied) (citation omitted). A plaintiff must establish causation beyond the point of conjecture, and proof of mere possibilities does not support submission of the issue to a fact finder. *Jelinek* 328 S.W. 3d at 537. In this regard, "mere speculation or conjecture is not sufficient to establish [a] causal connection between a defendant's conduct and the plaintiff's injuries." *Martin v. Durden,* 965 S.W.2d 562, 567 (Tex. App.–Houston [14th Dist.] 1997 writ denied) (citation omitted). In

sum, an expert must explain, to a reasonable degree of medical probability, how and why the alleged negligence caused the injury based on the facts presented. *Jelinek*, 328 S.W. 3d at 539-40.

In short, subject to the narrow exception for matters of common knowledge, a plaintiff must produce expert testimony to meet his burden of proof on a malpractice claim under Texas or Indiana law. *See Hannah*, 523 F.3d at 601; *see also Prindle v. United States*, No. 4:10-CV-54-A, 2011 WL 1869795, at **1–2 (N.D. Tex. May 13, 2011) (holding that expert testimony is required to establish the standard of care with respect to an FTCA claim that medical personnel were negligent in failing to diagnose and treat carcinoma); *Davis*, 400 F. Supp. 3d at 749.

Courts have routinely found that the standard of care, treatment and cause of loss of vision or hearing, including glaucoma, are outside the province of lay testimony. *See Thomas v. United States*, No. 4:12-CV-005-Y, 2013 WL 12092515, at *6 (N.D. Tex. July 9, 2013), *aff'd*, 566 F. App'x 348 (2014)(rejecting argument that eye disease such as glaucoma can be shown by lay testimony); *see also Mitchell v. United States*, No. 09-680 (RBK/KMW), 2011 WL 5863946, at *3 (D.N.J. Nov. 21, 2011) (explaining that whether ophthalmological treatments for eye condition as proximate cause of blindness not within the common knowledge of a lay person); *Rogers v. United States*, 216 F. Supp. 1, 3 (S.D. Ohio 1963) (explaining the "specialized art" of treating "the mysterious and dread disease of glaucoma" depends on expert evidence); *see e.g., Smart v. Winslow*, 868 S.W.2d 409, 411 (Tex. App.—Amarillo 1993, no writ) (finding parties did not dispute that expert medical testimony

was required to establish whether mis-diagnosis resulted in untreated glaucoma) (*citing Hart v. Van Zandt*, 399 S.W. 2d 791, 792 (Tex. 1965).

**B.    Self has no expert testimony and thus, cannot demonstrate that the United States was negligent in treating his eyew.**

In this case, Self has not shown—and cannot show—that the medical standard of care, and the issues of breach and causation regarding the treatment of the medical conditions detailed in his pleadings, are matters of common knowledge or within the general experience of a layperson, so as to excuse the requirement to provide evidence in the form of expert testimony. Moreover, the competent summary judgment evidence shows that Self was repeatedly seen and treated not only by medical staff, but also by outside ophthalmologists and optometrists, independent specialists who examined Self for glaucoma. The records reflect that BOP medical providers were responsive to Self's complaints that his vision was deteriorating from the disease and continually referred him to outside ophthalmologists, who evaluated his condition and recommended medications. BOP staff distributed these medications to Self on an ongoing basis. App. 30, 84–85, 94–95, 97, ECF No. 24-2. Thus, the BOP provided ongoing medical care to Self for his glaucoma.

At best, Self alleges he did not timely receive one or more medications or follow up evaluations by an ophthalmologist. Complaint 3-5, ECF No. 1. A delay in prescribed medical treatment, however, does not automatically equate to a finding of negligence. *Thomas*, 2013 WL 12092515, at *5. Self does not have expert testimony to establish either the standard of care or breach of that standard. He cannot show the proximate cause of any

injury. To the extent Self contends the government should have provided more follow up visits with an ophthalmologist or dispensed his medication sooner, his personal, lay opinion, unsupported with expert testimony, does not establish the standard of care or any breach of that standard. *See Thomas*, 2013 WL 12092515, at *6 (dismissing inmate's allegation that his diminished eye condition resulted from government negligence where plaintiff had no expert testimony); *see also Prindle*, 2011 WL 1869795, at *l–2 (dismissing claim of negligent failure to diagnose, treat or provide timely follow-up care for renal cell carcinoma where plaintiff had no expert testimony); *Woods v. United States Gov't*, No. 3:08-CV-1670-D, 2010 WL 809601, at *3 (N.D. Tex. Mar. 8, 2010) (dismissing medical negligence claim that doctor improperly prescribed medication where plaintiff had no expert testimony). Without Expert testimony, Self has not probative evidence that (a) BOP staff failed to meet the standard of care or (b) that such failure was the proximate cause of any loss of vision. *See Hannah*, 523 F.3d at 601.

## SELF'S RESPONSE/ MOTIONS for APPOINTMENT of EXPERT/COUNSEL

In an untimely response to the USA's motion for summary judgment, Self concedes that he has no expert testimony and thus, cannot raise a genuine issue of material fact to support his medical negligence claim. Resp. 1-3, ECF No. 27. But Self argues that the Court should either allow him more time to find an expert, appoint counsel, or appoint a medical expert on his behalf under Federal Rule of Evidence 706. Resp. 3-6, ECF No. 27; Mot. Counsel and Jury Trial, ECF No. 28. For the reasons set forth below, Self does not show good cause to modify the Court's scheduling order, nor does he show that he is entitled to a Court appointed expert, or that appointment of counsel is appropriate.

## A. Legal Standards Governing Modification of a Scheduling Order.

Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard requires the movant "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Puig v. Citibank, N.A.*, 514 F. App'x 483, 487-88 (5th Cir. 2013) (quoting *S&W Enters., L.L.C. v. South Trust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)(internal quotation omitted)); *Wachovia Bank, Nat'l Ass'n v. Schlegel*, No. 3:09-CV-1322-D, 2010 WL 2671316, at *3 (N.D. Tex. June 30, 2010) (Fitzwater, C.J.) (same). The Court assesses four factors in determining whether the movant has shown good cause under Rule 16(b)(4): (1) the party's explanation for failure to designate, (2) the importance of the requested relief for testimony, (3) potential prejudice in exending the deadline, and (4) the availability of a continuance to cure such prejudice. *Charalambopoulos v. Grammer*, No. 3:14-CV-2424-D, 2015 WL 5165344, at *3 (N.D. Tex. Sept. 3, 2015) (quoting *S&W Enters.*, 315 F.3d at 536). Mere inadvertence on the part of the movant, and the absence of prejudice to the non-movant are not sufficient to establish good cause. *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, No. 3:07-CV-1861-D, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (citations omitted).

## B. No Good Cause to extend the Court-Ordered Deadlines.

Self initially filed suit in August, 2018.Complaint, ECF No. 1. Although he was then incarcerated, Self was later released from prison and updated his address of record on December 6, 2018. Notice Address Change, ECF NO. 11. Self then provided a mailing address in Odessa, Texas. *Id.* On April 4, 2019, the Court issued a scheduling order setting

various deadlines for the prosecution of the case. Scheduling Order, ECF No. 18. In accordance with the terms of that order, Self served discovery to defendant USA on May 14, 2019, and Defendant responded on June 13, 2019. Self filed nothing else. Defendant supplemented its response on August 19, 2019. Again, Self did nothing more. The Court's scheduling order expressly required Self to designate an expert by August 26, 2019, but that date passed without any expert designation. Thus, Self did not designate an expert during the four months from the date of issuance of the scheduling order. And he was not incarcerated during this time. Self also did not move for an extension of time to designate an expert or then move the Court to appoint an expert. The Scheduling Order also required the filing of any dispositive motion by December 9, 2019, and the USA filed the pending summary judgment motion on that date. ECF No. 22.

Defendant USA informs that in October 2019, it attempted to confer with Self by letter in order to notice his deposition. The Defendant then learned from Self's family that he had violated his term of release and was once again incarcerated. USA Reply 3-4, ECF No. 31. Prior to Defendant's efforts to contact Self, he had not informed the Court or Defendant of his re-arrest and had not updated his address on file with the Court. Self did update his address on file with the Court on November 7, 2019. Notice Change Address, ECF No. 21. The record shows that other than seeking discovery from Defendant, which showed Self had an understanding of initially pursuing the case, he did not take any other action to prosecute his claims. Self apparently did not make any effort to find counsel or an expert during the many months the case was pending—or if he did, he was unsuccessful

in finding anyone willing to litigate his case or to opine against the medical care he received. This history of neglect and failure to prosecute his case establishes that Self cannot show good cause to extend the court's deadlines which were established approximately one year ago.

In this regard, Self's motions for a court-appointed expert and/or a court-appointed attorney filed at this time, after the close of discovery and a dispositive motion has been filed, are simply too late. Any order to now modify the schedule and re-start the discovery period would subject Defendant to significant prejudice. *See Akpan v. United States*, Civ. A. No. H-16-2981, 2017 WL 6527427, at *3 (S.D. Tex. Dec. 21, 2017) (finding potential prejudice to Defendant "quite significant" if the court extended the deadline to designate an expert after the close of discovery and dispositive motions filed); *Luna v. Macy's South, Inc.*, No. H-17-1759, 2018 WL 3008728, at *3 (S.D. Tex. June 15, 2018) (excluding expert witnesses who were not timely designated, regardless of the party's "intentions, or inattention, which led to the flouting of discovery deadlines") (citing *Geiserman v. Mac Donald*, 893 F.2d 787, 791 (5th Cir. 1990)). For these reasons, Self cannot show good cause to amend the schedule based upon his own dilatory conduct. As such, his post summary judgment motions for counsel and to appoint an expert must be denied.[3]

---

[3]Plaintiff also moves for a jury trial. Mot. Jury Trial, ECF No. 28. A Plaintiff is not entitled to a jury trial in and FTCA case. *See* 28 U.S.C. § 2402. Thus, Self motion for a jury trial must be denied.

**C. Alternative Denial of Motion for Expert under Rule of Evidence 706.**

As noted above, Self never sought the appointment of an expert under Federal Rule of Evidence 706 until his deadline to designate had passed and the USA had filed a summary judgment motion. Federal Rule of Evidence 706(a) provides the Court authority to appoint an expert to aid the parties, but the decision to appoint rests solely in the Court's discretion and is to be "informed by such factors as the complexity of the matters to be determined and the fact-finder's need for a neutral, expert view." *Tangwall v. Robb*, No.01-10008-BC, 2003 WL 23142190, at *3 (E.D. Mich. Dec. 23, 2003) (citations omitted). But in this case, the request by Self is not to provide a neutral expert. Instead, seeking such appointment only in response to a summary judgment motion is inherently a motion seeking to have the Court appoint an expert to help him prove the elements of his medical negligence claim under the FTCA. "Litigant assistance is not the purpose of Rule 706." *Daker and Kennedy, v. Wetherington,* No.1:01-CV-3257-RWS, 2006 WL 648765, at *5 (N.D. Ga. March 15, 2006) (citations omitted); *see Pedraza v. Jones,* 71 F.3d 194, 197 n.5 (5th Cir. 1995) (rejecting inmate plaintiff's request for appointment under Rule 706 when that appointment was only for his own benefit). Instructive is another district court's rejection of a pro se party's request for appointment of an expert in a legal malpractice case:

> The plaintiff's failure to secure an expert witness, after being given repeated opportunities by the Court to finds such a witness, demonstrates that the plaintiff is unable to prove his case. Moreover, the Court finds that the plaintiff's circumstances are not so "compelling" as to require the Court to appoint an expert on the plaintiff's behalf. *See Ledford[v. Sullivan]*, 105 F.3d 354, 358-59 (7th Cir. 1991). Indeed, the appointment of an expert witness for the plaintiff in this case under Rule 706 would be tantamount to the Court assisting the plaintiff in proving his case against the defendants. Rule 706

was not designed to provide such relief to a litigant.

*Tangwall*, 2003 WL 23142190 at *4. Thus, Self's motion for appointment of an expert under Rule 706 to support his claim of medical malpractice is not consistent with the purpose of Rule 706. *See generally Hannah*, 523 F.3d at 600-01 (affirming district court's denial of inmate's request to appoint an expert under Rule 706 for an FTCA claim).[4]

## CONCLUSION

Because Self failed to designate an expert who would provide evidentiary support for his medical negligence claims, he is unable to establish the standard of care or breach of that standard regarding the treatment while he was housed at FCI-Terre Haute and while housed at FMC-Fort Worth for his particular visions conditions. *See generally Hannah*, 523 F.3d at 602 (affirming district court's summary judgment in favor of defendant where inmate plaintiff did not designate or hire an expert to testify regarding the applicable standard of care and how the care received breached that standard); *Hibbs v. United States*, No. 3:11-CV-2601-N-BH, 2013 WL 4434800, at *5 (N.D. Tex. Aug. 19, 2013) (granting summary judgment because inmate plaintiff did not designate an expert in medical malpractice claim). Self cannot defeat summary judgment "with conclusory allegations, unsubstantiated assertions or 'only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d

---

[4]Self also seeks appointment of an expert on the basis that he proceeds in-forma-pauperis. But his pro-se pauper status alone would not qualify him for appointment of an expert. *See Hannah*, 523 F.3d at 601 (rejecting argument that pro-se IFP inmate litigant was entitled to an appointed expert under § 1915 and noting "the plain language of section 1915 does not provide for the appointment of expert witnesses to aid an indigent litigant") (quoting *Pedraza*, 71 F.3d at 196)).

312, 319 (5th Cir. 2007) (citations omitted). As Self has failed to provide expert testimony regarding the elements of his tort claim, he cannot create a material fact issue on whether the medical providers at FCI-Terre Haute or FMC-Fort Worth breached a duty that proximately caused his medical related injuries. The USA is entitled to summary judgment on Plaintiff's claims for relief under the FTCA.

## CONCLUSION

For the reasons discussed herein, it is **ORDERED** that Self's motions for appointment of counsel, for appointment of an expert, and for a jury trial (ECF Nos. 27, 28) are **DENIED**. It is further **ORDERED** that the USA's motion for summary judgment (ECF No. 22) is **GRANTED,** such that all of Eugene Self's claims against the United States of America are **DISMISSED WITH PREJUDICE.**

**SO ORDERED** on this **3rd day** of **April, 2020**.

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE